Lucy Harp HEDGESPETH, Appellant,

v.

E. T. HEDGESPETH, Appellee.

Court of Appeals of Kentucky.

April 26, 1957.

Robert E. Delahanty, Stanley A. Stratford, Louisville, for appellant.

Harold Y. Saunders, Shelbyville, for appellee.

MILLIKEN, Chief Justice.

This is an appeal from a dismissal of appellant's efforts to set aside an agreed property settlement which had been incorporated in a judgment granting her husband a divorce.

E. T. Hedgespeth, plaintiff in the divorce action, and Lucy Harp Hedgespeth, defendant-appellant, were married on July 4, 1950. Both had been married before, had raised families, and both had property holdings. Mrs. Hedgespeth was forty-eight years of age at the time of this marriage, but Mr. Hedgespeth's age does not appear. The couple lived together at the home of Mrs. Hedgespeth in Shelbyville, Kentucky, for about two years. Mr. Hedgespeth then returned to his farm in Green County. There was conflicting testimony as to the status of the marriage relationship for the next two years, the wife testifying that she visited him on occasions but could not remain with him in Green County because the facilities were inadequate and because her business interests in Shelbyville required her presence there. There was testimony on behalf of Mr. Hedgespeth that she came to the farm but once and left the following morning, saying that she wouldn't live there if the home were twice as big.

Mr. Hedgespeth filed suit for divorce on July 1, 1955, on the ground of cruelty, also filing an affidavit for an order of delivery as to certain furniture held by Mrs. Hedgespeth. On July 18, 1955, the court ordered that the furniture be delivered to Mr. Hedgespeth on July 25, 1955. On July 20, 1955, after negotiation by counsel, Mrs. Hedgespeth signed a property and alimony settlement agreement, accepting $1,000 as full settlement of all her claims and rights against Mr. Hedgespeth and agreeing that the settlement could be incorporated in the divorce judgment, if one were entered. On August 1, 1955, judgment of divorce was granted, the judgment incorporating the agreement. On the next day, August 2, 1955, on motion of Mrs. Hedgespeth her name was restored to Lucy Harp.

This would seem to have been the end of it, but such was not the case. On August 29, 1955, Mrs. Harp, calling herself Mrs. Hedgespeth, filed an affidavit in which she claimed, in essence, that she knew of the divorce action being brought but did not know whether there had been a judgment. Further, she stated that she had been in an automobile accident on July 26, 1955, in which she sustained such severe injuries that she suffered from dizzy spells, lapse of memory and a general nervous and upset condition. She named two doctors who attended her at that time, although for reasons best known to her they were never called to testify in the case. It may be worth noting that her proof of the accident consisted of her own testimony, her daughter's testimony, and the testimony of an insurance agent to the effect that she called him up and told him she had been in an automobile accident. She further deposed that while still abed she received calls from her attorney on July 30, 1955, and got out of her sick bed to sign a paper which he told her was for payment to her of $1,000 for the furniture Mr. Hedgespeth had taken, and that she did not know it was a property settlement agreement. She further stated that Mr. Hedgespeth owned land worth $15,000, a life estate in 250 acres of unknown value, livestock worth $15,000, and had an annual income of from $12,000 to $15,000. On September 6, 1955, Mrs. Harp (Hedgespeth) filed a motion to set aside the judgment insofar as it related to any property settlement. Three days later, on September 9, 1955, Mr. Hedgespeth died and Mrs. Harp (Hedgespeth) filed a petition for revivor on October 10, 1955. On October

20, 1955, the heirs of Mr. Hedgespeth filed a motion to dismiss, and on February 7, 1956, the court dismissed Mrs. Hedgespeth's action.

The trial court, in written findings of fact, found that no evidence was presented to the effect that the wife contributed in any way to the accumulation of her husband's property or that she was defrauded or over-reached in any way. In fact, he said: "The Court knows of his own knowledge that the defendant (Mrs. Hedgespeth) was and is a very astute business woman, and the Court feels strongly no one could mislead her." He also observed that: "The defendant's (husband's) family did not interfere in any respect."

We concur in the conclusions of the trial court, CR 52.01, and the judgment is affirmed.